IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WESTERN STAR HOSPITAL
AUTHORITY, INC., d/b/a METRO
HEALTH EMS,
      Plaintiff,

v.                                                 Civil Action No. 3:18-cv-647-JAG

CITY OF RICHMOND, VIRGINIA,
and RICHMOND AMBULANCE
AUTHORITY,
      Defendants.

## OPINION

For years, the Richmond Veteran's Administration Medical Center ("VA") has used the Richmond Ambulance Authority ("RAA") to provide non-emergency medical transportation for its patients. In 2018, however, the VA decided to consider other providers and opened a bidding process for these services. Western Star Hospital Authority, doing business as Metro Health EMS ("Metro Health"), says that it won the bid from the VA, but that RAA and the City of Richmond ("City") have prevented it from performing its contract by denying it a permit to operate emergency medical services ("EMS") vehicles.

Metro Health sued RAA and the City and moved for a preliminary injunction to prevent the defendants from interfering with its VA contract. RAA and the City moved to dismiss the operative complaint. For the reasons set forth in this Opinion, the Court will deny the plaintiff's motion for a preliminary injunction and grant the defendants' motions to dismiss.

### I. FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

RAA, a public corporation created and controlled by the City, provides non-emergency interfacility medical transport services for VA patients. In April, 2018, the VA solicited bids for

these services. RAA and Metro Health, a provider of non-emergency ambulance transportation for other veterans' hospitals, submitted bids. The VA awarded the work to Metro Health on the condition set forth in the bid that Metro Health obtain a permit from the City to operate EMS vehicles. Metro Health, through its Chief Operating Officer Lamont Doyle, received conflicting information from the City about whether it needed to obtain a permit and how to do so. Eventually, the City said that Metro Health must apply for a permit, but that no application process existed.

For months, Metro Health pestered the City about creating an application process. The City insisted that it could not act without the city council's approval. In August, 2018, the City finally posted an application on the fire department website. Although the application requirements "were arbitrary, extreme, and unfair," Metro Health applied for a permit. (Dk. No. 49, at 10.)

On September 21, 2018, Metro Health sued the City and the VA and requested a temporary restraining order to prevent the City from interfering with its contract with the VA. At a hearing on October 3, 2018, the Court denied Metro Health's motion for a temporary restraining order, but said that Metro Health could ask for a preliminary injunction after gathering more evidence. The Court also allowed Metro Health to amend its complaint. Metro Health later dismissed the VA and added RAA as a defendant.

On November 13, 2018, the Court stayed the case while the city council considered Metro Health's application. Despite the fire department's approval, the council denied the application in December, 2018, and the Court lifted the stay. In the interim, RAA has continued to provide transport services to the VA. Metro Health asserts that it could provide these services at a substantially lower cost, but the VA has suspended Metro Health's bid until it can obtain a permit. On January 31, 2019, the Court allowed Metro Health to file a second amended complaint.

Metro Health brings seven counts against the City and RAA: (1) monopolization in violation of the Sherman Act, 15 U.S.C. § 2; (2) attempted monopolization; (3) preemption by the Competition in Contracting Act, 41 U.S.C. § 3301; (4) a § 1983 claim for substantive and procedural due process violations; (5) a § 1983 claim for equal protection violations; (6) violations of the Contract Clause; and (7) tortious interference with Metro Health's contract or business expectancy. Metro Health moved for a preliminary injunction, both defendants moved to dismiss, and the parties agreed to a consolidated briefing schedule.

## II. MOTION FOR PRELIMINARY INJUNCTION

Metro Health asks the Court to enter a preliminary injunction to enjoin the defendants from "continuing their unlawful acts," without specifying what the Court should precisely order. (Dk. No. 52, at 23.) Presumably, Metro Health wants the Court essentially to give it a license or permit to transport VA patients. This relief would not just preserve the status quo but would mandate action by, at least, the City. Courts disfavor mandatory preliminary injunctions. *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994). The Court can only award mandatory preliminary relief after "exacting review." *Handsome Brook Farm v. Humane Farm Animal Care*, 193 F. Supp. 3d 556, 566 (E.D. Va. 2016).

Under Federal Rule of Civil Procedure 65(a)(1) a court may award the "extraordinary remedy" of a preliminary injunction only if the movant can "demonstrate [four factors] by 'a clear showing.'" *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345 (4th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008)). A movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Metro Health's motion fails on the likelihood of success element.[1] As set forth below, Metro Health's claims do not survive the motions to dismiss, so Metro Health cannot establish a clear likelihood of success on the merits. *See AttorneyFirst, LLC v. Ascension Entm't, Inc.*, 144 F. App'x 283, 285 n.2 (4th Cir. 2005) (observing that the district court properly considered a motion to dismiss "as going to the likelihood of success on the merits" on a preliminary injunction motion). The Court thus will deny the preliminary injunction.[2]

### III. MOTIONS TO DISMISS

The defendants argue that (1) they enjoy immunity from the antitrust claims in Counts One and Two; (2) the preemption claim in Count Three fails because the VA required compliance with the City ordinance requiring a permit for EMS vehicles ("Ordinance"); (3) Metro Health does not have a protected interest or fundamental right to support its constitutional claims in Counts Four and Five; (4) Count Six fails because the permit requirement existed when Metro Health submitted its bid, so the Ordinance did not interfere with the alleged VA contract; and (5) the City is immune from the state tort claim in Count Seven, but in any event, Metro Health does not have a contract with the VA, and cannot show that RAA interfered with its business expectancy.

---

[1] The Court has serious doubts about whether Metro Health satisfies any of the factors for preliminary relief. As to irreparable harm, the Court notes that Metro Health seeks monetary relief, which belies the irreparability standard. Moreover, Metro Health's evidence of non-monetary harm consists primarily of speculation that it might lose some good will, but this will not carry the day. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). Metro Health also says that an employee might decide to work elsewhere, but this evidence amounts to little more than speculation, not a showing of actual and imminent harm. *See id.* As to the balancing of the equities and the public interest, Metro Health says that it can provide low-cost services in a more competitive environment, but the City cites its interest in providing safe, quality emergency vehicle services. Even viewed in the light most favorable to Metro Health, these two factors amount to a draw and do not tip the scales in Metro Health's favor.

[2] While not determinative, Metro Health did not proceed with haste in seeking a preliminary injunction. Several factors contributed to the delay, but the Court expected Metro Health to file its motion soon after the Court denied the temporary restraining order in October, 2018. Metro Health did not move for an injunction until February 8, 2019.

4

### A. *Monopolization and Attempted Monopolization (Counts One and Two)*

The defendants argue that the state action immunity doctrine prevents Metro Health from pursuing its antitrust claims against them. The Court will consider whether immunity applies to the City and RAA in turn.

#### 1. *State Action Immunity for the City*

The state action immunity doctrine shields state governments from Sherman Act claims. *Parker v. Brown*, 317 U.S. 341, 350-51 (1943). Because immunity does not automatically extend to municipalities, they must act pursuant to a "clear articulation of a state policy to authorize anticompetitive conduct" to receive immunity. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40 (1985). The state must "affirmatively express[]" its policy to displace competition. *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 52 (1982). A municipality invoking the *Parker* doctrine, however, does not need to show "a specific, detailed legislative authorization," or an explicit statement that the state "expected the City to engage in conduct that would have anticompetitive effects." *Hallie*, 471 U.S. at 39, 42. The anticompetitive conduct must be a "foreseeable result" of the state policy. *Id.* at 42. Courts should not apply the foreseeability requirement too loosely. *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 229 (2013).

In a similar case, this Court held that the City of Richmond enjoyed immunity from an ambulance service provider's antitrust claims. *Forest Ambulance Serv., Inc. v. Mercy Ambulance of Richmond, Inc.*, 952 F. Supp. 296 (E.D. Va. 1997). Pursuant to *Hallie*, the Court looked for a "clear articulation of a state policy to authorize anticompetitive conduct." *Id.* at 299. Specifically, the Court reviewed a Virginia law that allows municipalities to regulate ambulance services:

> A. Upon finding as fact, after notice and public hearing, that exercise of the powers enumerated below is necessary to assure the provision of adequate and continuing emergency medical services and to preserve, protect and promote the public health,

5

safety and general welfare, the governing body of any county or city is empowered to:

> 1. Enact an ordinance making it unlawful to operate any emergency medical services vehicle or class thereof established by the Board in such county or city without having been granted a franchise, license or permit to do so;
>
> 2. Grant franchises, licenses or permits to emergency medical services agencies based within or outside the county or city; . . .
>
> **3. Limit the number of emergency medical services vehicles to be operated within the county or city and by any emergency medical services agency;**
>
> **4. Determine and prescribe areas of franchised, licensed or permitted service within the county or city;**
>
> **5. Fix and change from time to time reasonable charges for franchised, licensed or permitted services;**
>
> 6. Set minimum limits of liability insurance coverage for emergency medical services vehicles;
>
> 7. Contract with franchised, licensed or permitted emergency medical services agencies for emergency medical services vehicle transportation services to be rendered upon call of a county or municipal agency or department and for transportation of bona fide indigents or persons certified by the local board of social services to be public assistance or social services recipients; and
>
> 8. Establish other necessary regulations consistent with statutes or regulations of the Board relating to operation of emergency medical services vehicles.

Va. Code Ann. § 32.1-111.14(A) (emphasis added).[3] In *Forest Ambulance*, the Court found that subsections one through five, and especially three, four, and five, "*expressly* authorize anticompetitive conduct." 952 F. Supp. at 300 (emphasis added).

---

[3] Metro Health notes that the law carves out an exception for "[e]mergency medical services agencies operated by the United States government." Va. Code Ann. § 32.1-111.2. Metro Health, however, has not pled facts to show that it is an agency operated by the federal government.

6

The Court determined that "anticompetitive activity was the foreseeable, if not intended, result of the legislature's authorizing municipalities to regulate the provision of ambulance services." *Id.* at 299. The authorization would foreseeably "displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition." *Id.* at 300. Finding the *Hallie* test satisfied, the Court deemed the City "immune from antitrust attack under the *Parker* doctrine." *Id.*; *see also Gold Cross Ambulance, Inc. v. City of Kan. City*, 705 F.2d 1005, 1007 (8th Cir. 1983) (deciding that immunity shielded Kansas City from an ambulance service provider's suit because the city acted pursuant to a state law similar to the one in this case).

Two decades later, the Court finds the reasoning in *Forest Ambulance* persuasive. Virginia law clearly articulates the state's intent to permit localities to engage in anticompetitive conduct in the ambulance market. The law allows the City to limit the number of EMS vehicles, to prescribe where they operate, and to fix prices. *See* Va. Code Ann. § 32.1-111.14(A). These provisions constitute "authorizations to act or regulate in ways that [are] inherently anticompetitive." *Phoebe Putney*, 568 U.S. at 230. The authorizations in the statute pertain to specific conduct in a particular market, which differ from the "general power to act" that did not justify immunity in *Phoebe Putney*. *Id.* at 231. Thus, the state clearly articulated a policy justifying immunity in this case. The City has done precisely what the state law contemplates, determining that "[i]t is in the best interest of the City to create and to regulate a unified emergency medical services system." Richmond, Va., City Code § 10-79.

Although the Supreme Court warned against applying the foreseeability requirement "too loosely," *Phoebe Putney*, 568 U.S. at 229, this case does not implicate that concern. Section 32.1-111.14(A) expressly contemplates anticompetitive conduct, making such conduct more than "foreseeable." *Cf. id.* at 231 (finding that "simple permission [from the state] to play in a market"

7

does not meet the foreseeability standard). Like other cases that have satisfied *Hallie*, the "displacement of competition [in the EMS vehicles market] was the inherent, logical, or ordinary result" of Virginia's law. *Id.* at 229.

Metro Health makes a number of arguments to avoid this result. First, Metro Health claims that § 32.1-111.14 allows localities to monopolize *emergency* ambulance services, not the *non-emergency* ambulance transportation at issue here. The Court rejected the same argument in *Forest Ambulance*, finding that the Virginia statute allows localities to regulate "emergency medical services vehicles," which the law defines broadly. 952 F. Supp. at 300. An EMS vehicle is any vehicle designed to "provide emergency medical care or transportation of patients who are sick, injured, wounded, or otherwise incapacitated or helpless." Va. Code Ann. § 32.1-111.1. The Court determined that the statute regulates a certain type of vehicle, rather than how the vehicle is used. 952 F. Supp. at 300; *see also A-1 Ambulance Serv., Inc. v. Cty. of Monterey*, 90 F.3d 333, 336-37 (9th Cir. 1996) (finding that a statute allowing a county to create exclusive operating areas for ambulance service providers applied to non-emergency as well as emergency services). The Court agrees with the plain reading of the Virginia statute set forth in *Forest Ambulance*.

Metro Health also asks the Court to apply a market interest or proprietary interest exception to state action immunity.[4] The Fourth Circuit has not decided whether a market participant exception exists,[5] but other courts of appeals have declined to apply it.[6] This Court did not decide

---

[4] This argument derives from Supreme Court dicta noting that state action immunity "does not necessarily obtain where the State acts not in a regulatory capacity but as a commercial participant in a given market." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 374-75 (1991).
[5] Metro Health asserts that the Fourth Circuit recognized the exception in *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751 (4th Cir. 2018). That case, however, involved preemption, not state action immunity. *Id.* at 768-69.
[6] *See, e.g., Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 582 n.12 (3d Cir. 2017); *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 81 (2d Cir. 1998); *Paragould Cablevision, Inc. v. City of Paragould*, 930 F.2d 1310, 1312-13 (8th Cir.

8

the question in *Forest Ambulance* because, even if the exception existed, the City's involvement in the ambulance services market did not divest it of immunity. 952 F. Supp. at 301 (noting that the City paid over two million dollars in subsidies to RAA). In a similar case, another court said that even if a market participant exception existed, it would not apply to a city's provision of ambulance services because that is a traditional government function.[7] *AmeriCare MedServs., Inc. v. City of Anaheim*, No. 8:16-cv-1703, 2017 WL 1836354, at *10 (C.D. Cal. Mar. 28, 2017) (noting that the market participant inquiry "would be in tension with . . . *Parker* immunity"), *aff'd* 735 F. App'x 473 (9th Cir. 2018). The Court declines to apply an unrecognized exception here, especially in light of the "traditional government function" involved. *See id.*

Finally, Metro Health claims that *Forest Ambulance* "has been overruled" by *Phoebe Putney*. (Dk. No. 77, at 68:16-71:6.) That case, however, merely warned against applying the state action immunity test too broadly. In *Phoebe Putney*, a Georgia law granted hospital authorities "general corporate powers, including the power to acquire hospitals." 568 U.S. at 220. The Supreme Court determined that "Georgia's grant of general corporate powers" did not "include permission to use those powers anticompetitively." *Id.* In light of the state's open-ended authorization, the Supreme Court reiterated *Hallie*'s strict requirements. *See id.* at 229-32. Unlike the Georgia law, the Virginia statute in this case meets the requirements for state action immunity announced in *Hallie* and clarified in *Phoebe Putney*.

---

1991). *Compare VIBO Corp., Inc. v. Conway*, 669 F.3d 675, 687 (6th Cir. 2012) (acknowledging the exception), *with Wooster Indus. Park, LLC v. City of Wooster*, 55 F. Supp. 3d 990, 999-1000 (N.D. Ohio 2014) (declining to apply it).

[7] In a different context, the Virginia Supreme Court held that providing ambulance services qualifies as a government function. *Edwards v. City of Portsmouth*, 237 Va. 167, 171, 375 S.E.2d 747, 750 (1989).

Thus, none of Metro Health's arguments persuade the Court against applying state action immunity to the City. The Court will grant the City's motion to dismiss Counts One and Two.

## 2. *State Action Immunity for RAA*

State action immunity can shield private parties if they show that: (1) the state implemented a clearly articulated and affirmatively expressed state policy to displace competition; and (2) the state actively supervised the private conduct. *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum*, 445 U.S. 97, 105 (1980). "Imposing the 'active supervision' requirement depends on whether an entity engaging in anticompetitive conduct is 'more like [a] prototypical state agenc[y]' rather than 'specialized boards dominated by active market participants.'" *Turner v. Va. Dep't of Med. Assistance Servs.*, 230 F. Supp. 3d 498, 505 (W.D. Va. 2017) (quoting *N.C. State Bd. of Dental Exam'rs v. FTC*, 135 S. Ct. 1101, 1114 (2015) ("*N.C. Dental*")).

In this case, RAA argues that it is a public entity and thus the *Midcal* active supervision test should not apply. The Court in *Forest Ambulance* did not decide whether RAA qualified as a public or a private defendant, because it enjoyed immunity regardless. 952 F. Supp. at 303 n.4. Specifically, a related type of immunity, the *Noerr-Pennington* doctrine, shielded the private defendants in that case. *Id.* at 302. The *Noerr-Pennington* doctrine provides that "where a restraint upon trade or monopolization is the result of a valid governmental action . . . those urging the governmental action enjoy absolute immunity from antitrust liability for the anticompetitive restraint." *Id.*

The Supreme Court expressed concern about plaintiffs circumventing immunity by suing private parties whose competition the state regulates. *S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 56-57 (1985). Accordingly, courts have held that if a municipality is immune, the private party acting under the municipality's direction cannot be liable, and the

*Midcal* active supervision test does not apply. *See Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1500-01 (10th Cir. 1997) (collecting cases). Recently, the Ninth Circuit found an ambulance company immune from antitrust liability because it contracted with a city that enjoyed immunity. *AmeriCare*, 735 F. App'x at 475. Likewise, the Eighth Circuit did not apply *Midcal* in an ambulance monopoly case, declining to require active state supervision over a municipal function. *Gold Cross Ambulance*, 705 F.2d at 1014; *see also Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw., Inc.*, 810 F.2d 869, 878 (9th Cir. 1987) (shielding the private defendant as a recipient of the state's monopoly because "immunity exempts state action, not merely state actors").

Here, the Court does not need to apply *Midcal* to determine that immunity applies to RAA. It makes little sense to hold the recipient of the City's monopoly liable while the City enjoys immunity. Metro Health argues that the Court must apply the *Midcal* active supervision test to RAA, but *Midcal* "concerns situations where the state policy empowers private parties to exercise anti-competitive power over the very markets in which they participate." *AmeriCare MedServs., Inc. v. City of Anaheim*, No. 8:16-cv-1703, 2017 WL 5592892, at *2 (C.D. Cal. Apr. 21, 2017). Here, the state empowered the City to restrain competition, and "[RAA]'s monopoly is simply a byproduct of the City['s] actions pursuant to this power." *Id.*; *see also Edinboro Coll. Park Apartments*, 850 F.3d at 574 (finding the *Midcal* test unnecessary when a private defendant was "merely an adjunct to a government's anticompetitive action").

Metro Health argues that a recent case changes the analysis. In *N.C. Dental*, the Supreme Court considered whether state action immunity extended to a state board of dental examiners that tried to exclude non-dentists from the teeth whitening market. 135 S. Ct. at 1110. Because the board was "controlled by active market participants"—dentists in private practice—the Supreme Court applied *Midcal*. *Id.* at 1110, 1112-14. The Court held that "a state board on which a

controlling number of decisionmakers are active market participants in the occupation the board regulates must satisfy *Midcal*'s active supervision requirement in order to invoke state-action antitrust immunity." *Id.* at 1114. The Supreme Court's decision to apply *Midcal* to a board of practicing dentists who tried to exclude non-dentists from the teeth whitening market does not change the Court's decision that RAA, the beneficiary of the City's conduct in this case, must receive immunity as well.[8]

The Court, therefore, will grant RAA's motion to dismiss Counts One and Two.

### B. Supremacy Clause/Preemption (Count Three)

The Supremacy Clause provides that the Constitution and federal laws are supreme to state laws.[9] U.S. Const., art. VI, cl. 2. Federal law preempts state law: "(1) where Congress explicitly and unambiguously defines the extent to which its enactments preempt state law; (2) where . . . a state law regulates conduct in a field over which Congress intended the federal government to exercise exclusive authority; and (3) where the state law actually conflicts with the federal law." *Taubman Realty Grp. Ltd. P'Ship v. Mineta*, 198 F. Supp. 2d 744, 761 (E.D. Va. 2002).

Metro Health appears to rely on the third preemption method by alleging that the Competition in Contracting Act ("CICA") conflicts with the defendants' regulations and conduct. An actual conflict between state and federal law occurs (1) "where it is impossible for a private party to comply with both state and federal requirements," or (2) "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

---

[8] For the same reasons, *N.C. Dental* does not persuade the Court to apply *Midcal* to the City.
[9] "[T]he Supremacy Clause, of its own force, does not create rights enforceable under § 1983." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989). A plaintiff may enforce a Supremacy Clause claim under § 1983 only where it is based on a statutory violation and the statute creates rights or obligations intended to benefit the plaintiff. The Court assumes that Metro Health can bring a § 1983 Supremacy Clause claim because, in any event, Count Three fails.

*Taubman Realty*, 198 F. Supp. 2d at 761 (internal quotation omitted). CICA provides that "an executive agency in conducting a procurement for property or services shall obtain full and open competition through the use of competitive procedures." 41 U.S.C. § 3301(a). Metro Health essentially asserts that the defendants "[stood] as an obstacle" to the VA's competitive bidding process under CICA. *Taubman Realty*, 198 F. Supp. 2d at 761.

The VA, however, required Metro Health to comply with local laws and to obtain a permit from the City as conditions of its bid. In other words, this case does not involve a locality trying to enforce licensing requirements that give the locality "a virtual power of review" over a federal hiring decision. *See United States v. Virginia*, 139 F.3d 984, 988 (4th Cir. 1998). Instead, because the VA imposed the permit requirement, the Ordinance itself does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Taubman Realty*, 198 F. Supp. 2d at 761; *see also In re Lifeline Ambulance Servs., Inc.*, B-277415, 97-2 CPD ¶ 83 (Comp. Gen. Sept. 22, 1997) (noting that the VA may require ambulance service providers to obtain local permits to prevent a locality from disrupting services by attempting to enforce its licensing requirement).

The second amended complaint thus fails to allege a conflict between CICA and the Ordinance, and the Court will grant the defendants' motions to dismiss Count Three.

### C. Procedural and Substantive Due Process (Count Four)

The Fourteenth Amendment mandates that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, which includes procedural and substantive due process, *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998).

### 1. Procedural Due Process Claim

To establish a procedural due process violation, a plaintiff must show (1) that it has a cognizable liberty or property interest; (2) that the state deprived the plaintiff of that interest; and (3) that the procedures employed were not constitutionally adequate. *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012). To establish a protected interest, the plaintiff "must have more than an abstract need or desire for it," and "more than a unilateral expectation of it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Instead, the plaintiff must "have a legitimate claim of entitlement to it." *Id.* Adequate procedures typically entail notice and an opportunity to be heard. *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008).

The Constitution does not protect Metro Health's interest in its ability to conduct business profitably. *See Forest Ambulance*, 952 F. Supp. at 303. "[A]ny expectancy of profitable business is merely a unilateral expectation that does not rise to the level of entitlement necessary to state a claim under the Fourteenth Amendment." *Id.* at 304. The City has "absolute discretion and power as to the granting of ambulance franchises and permits, and nobody in particular—nobody at all even—has any constitutional right to be granted one." *Id.*; *see also Biser v. Town of Bel Air*, 991 F.2d 100, 104 (4th Cir. 1993) ("A property interest requires more than a unilateral expectation that a permit or license will be issued."). Metro Health does not state a procedural due process claim.

### 2. Substantive Due Process Claim

Substantive due process bars certain government actions, "regardless of the fairness of the procedures used to implement them." *Lewis*, 523 U.S. at 840. If a plaintiff raises a substantive due process challenge to a law, courts first decide if the case involves a fundamental right—meaning one "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty." *Hawkins v. Freeman*, 195 F.3d 732, 739 (4th Cir. 1999). If the right is

fundamental, courts apply strict scrutiny to the law; otherwise, they apply rational basis review. *Id.* Under rational basis review, courts uphold the law as long it "is rationally related to a legitimate state interest." *Stevens v. Holder*, 966 F. Supp. 2d 622, 638-39 (E.D. Va. 2013). Conclusory allegations that the law cannot survive rational basis review will not suffice. *See Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 841 (E.D. Va. 2015).

Metro Health's substantive due process claim fails. This case does not involve a fundamental right; it involves a discretionary permit. *See Biser*, 991 F.2d at 104 (affirming dismissal of a substantive due process claim regarding a discretionary zoning exception). Metro Health's conclusory assertions that the Ordinance, or the defendants' actions, would not survive rational basis review do not enable its substantive due process claim to proceed. *See Forest Ambulance*, 952 F. Supp. at 305 ("[T]he governmental action was entirely legitimate in that the City's actions were fully authorized by those of the state legislature, which were authorized under the federal antitrust laws.").

Accordingly, the Court will grant the defendants' motion to dismiss Count Four.[10]

### D. Equal Protection (Count Five)

The Fourteenth Amendment also prohibits states from denying equal protection under the law. U.S. Const. amend. XIV, § 1. A plaintiff can allege an equal protection claim by identifying a law that expressly classifies based on a protected group. *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003). If a law does not implicate fundamental interests, especially if it "deal[s] only with economic matters," courts apply rational basis review. *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 813 (1976).

---

[10] Metro Health alleges that "both defendants are state actors" for Counts Four and Five. (Dk. No. 49, at 25-26.) The Court does not need to reach whether RAA is a state actor because, regardless, Metro Health fails to state constitutional claims.

The parties here agree that rational basis review applies to the Ordinance, and the Court finds that the Ordinance survives this level of review. The City "ha[d] an obvious legitimate interest in ensuring the provision of high quality ambulance services to all of its citizens." *Forest Ambulance*, 952 F. Supp. at 305. The licensure process rationally serves this interest.

A plaintiff can also allege that a law has been applied in an intentionally discriminatory way, or that discriminatory animus motivated lawmakers to pass a law that has had an adverse effect on a protected group. *Williams*, 326 F.3d at 584. To challenge the application of a law, a plaintiff must show that the state, due to intentional discrimination, denied a benefit to the plaintiff that it granted to others similarly situated. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 825 (4th Cir. 1995). The plaintiff also must allege "specific, non-conclusory factual allegations of an invidious discriminatory intent," *Williams*, 326 F.3d at 584, not mere disparate treatment, *Forest Ambulance*, 952 F. Supp. at 306.

Instead of alleging "clear and intentional discrimination," Metro Health claims that the City selectively enforced the Ordinance. *Id.* at 305-06. Disparate treatment alone, however, will not suffice, and Metro Health does not allege facts to show "any sort of discriminatory animus." *Id.* As a court noted in a similar case, "[e]ssential to every licensing system, whether it affects ambulance service or any other industry, is a procedure by which the licensing authority distinguishes between those who qualify for licenses and those who do not." *Gold Cross Ambulance v. City of Kan. City*, 538 F. Supp. 956, 972-73 (W.D. Mo. 1982), *aff'd*, 705 F.2d 1005 (8th Cir. 1983) (finding that the plaintiffs failed to allege that the city based its decision to enforce its ambulance service ordinance "on any impermissible ground").

Thus, because Metro Health fails to state an equal protection claim, the Court will grant the motions to dismiss Count Five.

### E. *Contract Clause (Count Six)*

The Contract Clause provides, "No State shall . . . pass any . . . [l]aw impairing the [o]bligation of [c]ontracts." U.S. Const. art. I, § 10, cl. 1. When a plaintiff asserts a claim under the Contract Clause, courts must decide: "(1) whether there has been an impairment of a contract; (2) whether the state law has operated as a *substantial* impairment of a contractual relationship; and (3) if there has been a substantial impairment, whether the impairment is permissible because it is reasonable and necessary to serve an important public purpose." *Cherry v. Mayor & City Council of Balt.*, 762 F.3d 366, 371 (4th Cir. 2014) (emphasis in original).

"If the plaintiffs retain the right to recover damages for breach of contract, there is no impairment of contract under the Contract Clause." *Id.* In other words, "recourse to § 1983 for the deprivation of rights secured by the Contract[] Clause is limited to the discrete instances where a state has denied a citizen the opportunity to seek adjudication through the courts." *Crosby v. City of Gastonia*, 635 F.3d 634, 640 (4th Cir. 2011). Thus, a court's "task is not to decide whether a breach of contract has occurred, but to determine whether the City has erected a legal barrier 'that [has] prevented the [plaintiffs] from obtaining damages, or some equivalent remedy, for [any] breach.'" *Cherry*, 762 F.3d at 371 (quoting *Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1251 (7th Cir. 1996)) (finding no violation when the plaintiff could sue in state court).

Here, the Ordinance existed before Metro Health submitted its bid to the VA, so the Contract Clause does not apply. *See Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429-30 (1934) (noting that the Clause does not implicate laws that existed when parties entered into a contract). In any event, Metro Health has not pled an impairment of its alleged contract with the VA because it has not been deprived of its right to seek redress through the courts. Accordingly, the Court will grant the defendants' motion to dismiss Count Six.

## F. Tortious Interference with Contract or Business Expectancy (Count Seven)

To state a claim for tortious interference with a contract right or business expectancy, a plaintiff must plead (1) a valid contract or business expectancy; (2) that the defendant knew about the contract or expectancy; (3) intentional interference causing a breach or termination of the contract or expectancy; and (4) damages. *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 145, 670 S.E.2d 704, 706 (2009).

If the contract is terminable at will or the case involves a business expectancy, the plaintiff also must show that the defendant used "improper methods." *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 143-44 (4th Cir. 2014); *Duggin v. Adams*, 234 Va. 221, 226-27, 360 S.E.2d 832, 836 (1987). "Improper methods" include illegal means, violence, bribery, unfounded litigation, fraud, defamation, duress, undue influence, misuse of inside information, or breach of a fiduciary relationship. *Duggin*, at 234 Va. at 227, 360 S.E.2d at 836. On the other hand, when a defendant engages "in the lawful exercise of its statutory and contractual rights which incidentally may have interfered with the plaintiff's private negotiations, such conduct is not actionable." *Priority Auto*, 757 F.3d at 144.

Here, the tort claim fails as to RAA because Metro Health's substantive allegations of interference pertain to the City, and Metro Health does not plead facts to show improper methods by RAA. (*See, e.g.*, Dk. No. 49, at 9 (the City refused to meet with Doyle about a permit); *id.* at 10 (the City imposed arbitrary application requirements); *id.* at 10-11 (the City denied Metro Health a permit).) Other than alleging that RAA referred Doyle to the City when he asked about a permit, Metro Health claims only that RAA continued to perform its VA contract. *See Priority Auto*, 757 F.3d at 144. This conduct does not amount to an improper method.

For its part, the City is immune from this claim. Sovereign immunity protects localities from tort liability when they perform governmental functions, but not proprietary functions. *City of Va. Beach v. Carmichael Dev. Co.*, 259 Va. 493, 499, 527 S.E.2d 778, 782 (2000). Governmental functions "are powers and duties to be performed exclusively for the public welfare." *Id.* Proprietary functions include those "performed primarily for the benefit of the municipality." *Id.* When governmental and proprietary functions coincide, "the governmental function is the overriding factor" and sovereign immunity applies. *Id.* In Virginia, providing ambulance services qualifies as a governmental function. *Edwards*, 237 Va. at 171, 375 S.E.2d at 750.

In this case, the City enjoys immunity because it acted, at least in part, in a governmental capacity by regulating EMS vehicles. Because the City is immune and Metro Health fails to state a claim as to RAA, the Court will grant the defendants' motions to dismiss Count Seven.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the plaintiff's motion for a preliminary injunction and grant the defendants' motions to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 8 Aug. 2019
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge